**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MATTHEW JOHNSON**, on behalf of himself and all others similarly situated, | Civil Case No.: 16-CV-50113 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| **UBER TECHNOLOGIES, INC.,** | |
| Defendant. | |

## INTRODUCTION

1.     This action arises out of Defendant Uber Technologies, Inc.'s ("Defendant") practice of sending autodialed text messages to individuals even after those individuals asked Defendant, in writing, to "stop." Defendant's actions violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.     Plaintiff Matthew Johnson is one such recipient of Defendant's spam text messaging. Defendant has sent numerous text messages to Plaintiff's cellular telephone number after Plaintiff, on multiple occasions and in writing, expressly asked Defendant to "STOP" sending him text messages.

3.     Plaintiff Johnson is not alone. According to a December 2014 article, numerous complaints have been filed with the FTC in which the complainant alleges the he or she has been unable to stop Defendant's text messages, despite repeatedly telling Defendant to "stop."[1]

4.     These post-"STOP" text messages were sent without the express consent of the

---

[1] http://motherboard.vice.com/read/ubers-text-message-spam-is-driving-people-crazy, last accessed April 20, 2016.

recipients.

5. All of these text messages were sent using an automatic telephone dialing system, and none of them were sent for an emergency purpose.

6. Accordingly, Plaintiff brings this TCPA action on behalf of himself and a proposed class of similarly situated individuals who asked Defendant to "stop" sending them text messages, to no avail.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

8. This Court has personal jurisdiction over Defendant because Defendant conducts significant amounts of business within this District and its wrongful conduct was directed at this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business within this District, because the wrongful conduct was directed at this District, and because Plaintiff resides in this District.

## PARTIES

10. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Genoa, Illinois.

11. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

12. Defendant Uber Technologies, Inc. is, and at all times mentioned herein was, a Delaware corporation headquartered at 1455 Market Street, 4th Floor, San Francisco, CA 94103.

Defendant conducts significant business in Illinois and nationwide.

13.    Defendant Uber Technologies, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

## FACTS

14.    Since at least early 2016, Defendant has sent dozens of text messages to Plaintiff's cellular telephone number 815-###-0795.

15.    Upon information and belief, Defendant acquired Plaintiff's telephone number when Plaintiff applied to be a driver for Defendant and/or a driver using Defendant's technology.

16.    Plaintiff ultimately decided against completing his application.

17.    Shortly thereafter, Defendant began sending text messages to Plaintiff's cellular telephone inquiring into whether Plaintiff needs help finishing his account, and inviting Plaintiff to speak with a local Uber representative.

18.    No longer interested in Defendant's services, Plaintiff, on numerous occasions, replied "Stop", which was the method provided in the text messages to stop further messages.

19.    These "stop" requests were a revocation of any express consent Plaintiff previously gave to receiving text messages.

20.    Defendant's automated system responded to these "stop" requests with a confirmation text stating "SMS from Uber is now disabled. To re-enable, reply START."

21.    Plaintiff never replied "START" after the first time he sent a "stop" request.

//

//

//

22.     Nonetheless, despite these stop requests, Defendant continued to send automated non-confirmation texts to Plaintiff's cellular telephone, as seen in the following screenshots:



23.     These post-"stop" messages were sent without Plaintiff's prior express consent.

24.     Furthermore, while Plaintiff had an Uber *rider* account (as opposed to driver account, which the text messages appear to reference), upon information and belief, he never actually used the Uber services.

25.     However, in a further effort to get the text messages to stop, Plaintiff deleted his Uber account.

26.     This deletion was acknowledged via email on April 27, and confirmed (ironically) via text message that same day with the text message "We've resolved your inquiry."

27.     Plaintiff again replied stop, but, as before, the text messages continued.

28.     All of these text messages were made using an "automatic telephone dialing system" as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and

orders. The system(s) used by Defendant has/have the capacity to store numbers, or to produce telephone numbers to be called using a random or sequential number generator.

29.    This is evidenced by:

- The similar content and structure for the messages;

- The regularity of the messages;

- The inability to stop the messages;

- That incoming messages are not monitored;

- That the number used to send the text messages does not accept incoming phone calls;

- That the messages can be stopped and started automatically via a "STOP" and "START" command;

- That none of the messages were sent with human intervention.

30.    These text messages were not sent for an emergency purpose.

31.    Accordingly, Defendant's post-"stop", non-confirmation text messages were sent in violation of the TCPA, as they were sent to Plaintiff's cellular telephone using an automatic telephone dialing without Plaintiff's prior express consent.

32.    Plaintiff has suffered actual injury as a result of Defendant's texts, including:

- Device storage;

- Data usage;

- Plan usage;

- Lost time tending to and responding to the unsolicited texts;

- Invasion of Privacy.

33.    Plaintiff is entitled to statutory damages, actual damages, and injunctive relief.

34.    Specifically, Plaintiff is entitled to at least $500 for each non-confirmation, post-"stop" text message sent to his cellular telephone.[2]

35.    Plaintiff is also entitled to treble damages for these text messages, as they were made willfully or knowingly and in violation of the TCPA.

36.    Defendant's actions were willful because Defendant sent the texts of its own volition.

37.    Defendant's actions were knowing because Defendant knew it was sending text messages to a cellular telephone, knew it was using an automatic telephone dialing system, and knew or should have known it did not have consent.

38.    Accordingly, Plaintiff is entitled to $1,500 per non-confirmation, post-"stop" text message sent to his cellular telephone.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class defined as:

> Plaintiff and all persons within the United States to whose cellular telephone number Defendant Uber Technologies, Inc. sent, in the past four years, a text message, other than an opt-out confirmation text message, using an automatic telephone dialing system, after Defendant's records, or the records of any vendor with whom Defendant contracted to provide text messaging services, indicate Defendant received a text message containing the single word "STOP" from that cellular telephone number.
>
> ("Class")

---

[2] Plaintiff reserves the right to seek damages for confirmation texts received in response to all "stop" requests after the first "stop" request, as those further "stop" requests (and subsequent confirmation text) were necessitated by Defendant's failure to abide by the original stop request.

40.     Excluded from this class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

41.     The Class members for whose benefit this action are brought are so numerous that joinder of all members is impracticable.

42.     The exact number and identities of the persons who fit within the class are ascertainable in that Defendant Uber maintains written and electronically stored data showing:

a.   The time period(s) during which Defendant Uber sent its text messages;

b.   The telephone numbers to which Defendant Uber sent its text messages;

c.   The telephone numbers which sent a "STOP" text message to Defendant;

d.   The telephone numbers to which a text message was sent after Defendant received a "STOP" text message from that telephone number;

e.   The content of these text messages.

43.     The Class is comprised of hundreds, if not thousands, of individuals nationwide.

44.     There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

a.   Whether Defendant Uber used an automatic dialing system in placing its calls;

b.   Whether Defendant Uber took adequate steps to acquire and/or track consent;

c.   Whether and to what extent Defendant Uber honored "STOP" requests from text message recipients;

d.  Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violations; and

e.  Whether Defendant should be enjoined from engaging in such conduct in the future.

45.    Plaintiff is a member of the Class in that he received text messages from Defendant Uber after he sent the text "STOP."

46.    Plaintiff's claims are typical of the Class members' claims in that they arise from Defendant's uniform conduct and are based on the same legal theories as Class members' claims.

47.    Plaintiff and all putative Class members have also necessarily suffered actual damages in addition to statutory damages, as all Class members spent time tending to Defendant's unwanted text messages and, due to the nature of text messages, the text messages at issue took up space on putative Class members' devices, used Class members' cellular telephone plans, caused a nuisance to Class members, and invaded Class members' privacy.

48.    Plaintiff has no interests antagonistic to, or in conflict with, the Class.

49.    Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the Class.

50.    Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class as a whole.

51.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

52.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

53.     Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)

54.     Plaintiff and the proposed Class incorporate the foregoing allegations as if fully set forth herein.

55.     Defendant sent numerous text messages to Plaintiff and Class members on their cellular telephone numbers.

56.     These text messages were sent after Plaintiff and Class members responded "stop" to these text messages in an effort to stop further messages, thereby revoking their consent.

57.     These text messages were all sent using an "automatic telephone dialing system."

58.     The text messages were not sent for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

59.     Plaintiff and Class members are entitled to an award of $500 in statutory damages for each post-"stop", non-confirmation text message, pursuant to 47 U.S.C. § 227(b)(3)(B).

60.     Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each post-"stop", non-confirmation text message, pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Matthew Johnson, individually and on behalf of the Class, prays for the following relief:

A.      An order certifying the Class as defined above, appointing Plaintiff Matthew

Johnson as the representative of the Class, and appointing his counsel as Class Counsel;

B.      An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. §

227;

C.      An award of injunctive and other equitable relief as necessary to protect the

interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the

wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages;

F.      An award of reasonable attorneys' fees and costs; and

G.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** May 2, 2016

*/s/ Jeremy M. Glapion*
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com